Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
Brandt Silver-Korn (SBN 323530)
bsilverkorn@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300/Fax: 415.373.9435

*Attorneys for Plaintiff Sean Wilson*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **In re Subpoena Of**<br>**META PLATFORMS, INC.** | Case No. _____<br><br>**PLAINTIFF'S MOTION**<br>**(1) TO COMPEL PRODUCTION OF DOCUMENTS BY THIRD PARTY META PLATFORMS, INC. AND**<br>**(2) FOR TRANSFER MOTION TO WESTERN DISTRICT OF WASHINGTON PURSUANT TO FED. R. CIV. P. 45(f)** |
| **Underlying Case**<br><br>SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff*,<br><br>    *v.*<br><br>PTT, LLC, a Delaware limited liability company, d/b/a High 5 Games, LLC, a Delaware limited liability company,<br><br>        *Defendant*. | No. 18-cv-05275-RSL (W.D. Wash.) |

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................................1

**ARGUMENT** ........................................................................................................................3

    A. Legal Standards ..........................................................................................3

    B. The Court Should Transfer The Proceeding To The Western District of Washington ...................................................................................................4

    C. Alternatively, The Court Should Compel Facebook To Comply With The Subpoena ......................................................................................................5

**CONCLUSION** .....................................................................................................................6

# TABLE OF AUTHORITIES

**United States Court of Appeals Cases:**

*Kater v. Churchill Downs Inc.*,
    886 F.3d 784 (9th Cir. 2018) ................................................................................................. 1

**United States District Court Cases:**

*Argento v. Sylvania Lighting Servs. Corp.*,
    No. 15-cv-01277-JAD-NJK, 2015 WL 4918065 (D. Nev. Aug. 18, 2015) ........................ 5

*Benson v. DoubleDown Interactive, LLC*,
    No. 18-cv-00525-RBL (W.D. Wash.) .................................................................................. 4

*Kater v. Churchill Downs Inc.*,
    No. 15-cv-00612-RSL, 2020 WL 7220619 (W.D. Wash. Nov. 23, 2020) ........................ 2

*Kater v. Churchill Downs Inc.*,
    No. 15-cv-00612-RSL, 2020 WL 7220618 (W.D. Wash. Nov. 16, 2020) ........................ 4

*Gonzales v. Google, Inc.*,
    234 F.R.D. 674 (N.D. Cal. 2006) ......................................................................................... 3

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*,
    301 F.R.D. 426 (N.D. Cal. 2014) ......................................................................................... 3

*Wilson v. PTT, LLC*,
    No. 18-cv-05275-RSL, 2021 WL 211532 (W.D. Wash. Jan. 21, 2021) ............................ 1

*Wilson v. PTT, LLC*,
    No. 18-cv-05275-RBL (W.D. Wash.) ......................................................................... 2, 4, 5

*Wilson v. PTT, LLC*,
    351 F. Supp. 3d 1325 (W.D. Wash. 2018) ......................................................................... 1

*Wultz v. Bank of China, Ltd*,
    304 F.R.D. 38 (D.D.C. 2014) ............................................................................................... 3

**Miscellaneous Authority:**

Fed. R. Civ. P. 26 ............................................................................................................................ 3

Fed. R. Civ. P. 45 ...................................................................................................................... 3, 4

Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment ....................................... 2, 3, 4

Wash. Rev. Code
    § 9.46.0237 ................................................................................................................ 1

# INTRODUCTION

In April 2018, Plaintiff Sean Wilson filed a proposed class action lawsuit against a Delaware company doing business as High 5 Games ("High 5"). *See* Exhibit 1 (Proposed Class Action Complaint). Filed in the Western District of Washington, the case alleges that High 5 operates illegal app-based online casinos, and under Washington law is obligated to return to Plaintiff and members of the class their losses to High 5's illegal online casinos. *See, e.g.*, *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 (9th Cir. 2018) ("Because the virtual chips are a 'thing of value,' we conclude that [one of High 5's competitor's apps] falls within Washington's definition of an illegal gambling game.") (citing Wash. Rev. Code § 9.46.0237). The district court denied High 5's motion to dismiss in December 2018, *see Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1340 (W.D. Wash. 2018), and in 2021 granted Plaintiff's motion for class certification—certifying a class of all Washington consumers who have purchased virtual chips in High 5's social casinos since April 9, 2014. *See Wilson v. PTT, LLC*, No. 18-cv-5275-RSL, 2021 WL 211532, at *9 (W.D. Wash. Jan. 21, 2021). Post-certification discovery proceeded, and Plaintiff is now preparing to file a motion for summary judgment.

A key piece of summary judgment evidence in this case is virtual chip transaction data from within High 5's social casino games. That's so because the thrust of Plaintiff's lawsuit is that those transactions are illegal and, under Washington law, must be refunded. In response to Plaintiff's Requests for Production seeking this transaction data, *see* Declaration of Brandt Silver-Korn ("Silver-Korn Decl.") ¶ 2, Exhibit 2, High 5 has—to its credit—produced a substantial volume of data. But its productions have not been complete, and High 5 has consistently questioned the reliability of the location-related (*i.e.*, IP address) data associated with the transaction logs it has produced. *See* Silver-Korn Decl. ¶ 3, Exhibit 3 at 1 (letter from High 5's counsel).

Fortunately, there is an elegant solution to this problem. In its capacity as the operator of the Facebook App Center, Meta Platforms, Inc. ("Facebook")—together with Apple (the App Store) and Google (Google Play Store)—possesses essentially all of the transaction data Plaintiff

needs to prepare his summary judgment motion. So in October 2021, Plaintiff served Facebook (as well as Apple and Google) with a subpoena seeking transaction data from High 5's main two casino apps.[1] *See* Silver-Korn Decl. ¶ 4, Exhibit 4 (Subpoena to Facebook); Silver-Korn Decl. ¶ 5, Exhibit 5 (Subpoenas to Apple, and Google).[2] Facebook served its objections on November 26, 2021, *see* Silver-Korn Decl. ¶ 7, Exhibit 6 (Facebook's Objections), and the parties have twice met and conferred in an effort to resolve their differences without intervention from the Court. *See* Silver-Korn Decl. ¶ 8. Unfortunately, the parties have not yet reached an agreement, even though the other platforms have either already fully produced the requested transaction data (Google) or committed to do so imminently (Apple). *See id.* ¶¶ 8-9.

Consequently, through this enforcement proceeding, Plaintiff seeks to compel Facebook to produce documents sufficient to allow Plaintiff to prepare his summary judgment motion. Specifically, this proceeding seeks to compel Facebook to produce anonymized data reflecting transactions in Washington that Facebook's "App Center" processed for two of High 5's apps: "High 5 Casino" and "High 5 Vegas."

Moreover, because the underlying matter is one of six related consumer class actions against social casino companies in the Western District of Washington, and because the district court in the Western District has already grappled with and approved of similar subpoenas to platforms in the underlying case and in related cases, *see, e.g.*, *Wilson v. PTT, LLC*, No. 18-cv-05275, Dkt. 132 (W.D. Wash.) (granting in part and denying in part motion to quash subpoenas to Google and Facebook for certain transaction data),[3] this enforcement proceeding should be

---

[1] Notably, Apple and Google had already produced most of the relevant transaction data in Spring 2020 in response to practically identical subpoenas Plaintiff served prior to his motion for class certification, and so the October 2021 subpoenas to these platforms simply requested updated (i.e., present) data.

[2] Though the subpoenas do not expressly limit the requested data to transactions in Washington, that omission is a scrivener's error, and Plaintiff's counsel has communicated to counsel for the platforms that the October 2021 subpoenas seek only Washington transactions. Plaintiff's counsel has also communicated to counsel for Facebook that this motion only seeks to compel production of data for transactions in Washington. *See* Silver-Korn Decl. ¶ 6.

[3] *See also Kater v. Churchill Downs Inc.*, No. 15-cv-00612-RSL, 2020 WL 7220619, at *1 (W.D. Wash. Nov. 23, 2020) (denying Amazon's motion for reconsideration of an order compelling Amazon to produce data related to social casino users in response to a subpoena).

transferred to the Western District of Washington—the Court that has been overseeing the underlying litigation for more than three years. The Advisory Committee Notes to the 2013 Amendment to Federal Rule of Civil Procedure 45(f) provide that transfer to the issuing court is appropriate "in order to avoid disrupting the issuing court's management of the underlying litigation." This motion presents a textbook case for transfer along those lines.

The Court should transfer this proceeding to the Western District of Washington. Alternatively, the Court should enter an Order compelling Facebook to comply immediately with the subpoena attached hereto as Exhibit 4.

## ARGUMENT

**A.    Legal Standards**

A discovery dispute may be transferred from the district where compliance is required if "exceptional circumstances" justify the transfer. Fed. R. Civ. P. 45(f). One such set of exceptional circumstances is where transfer is necessary "to avoid disrupting the issuing courts management of the underlying litigation," such as "when the issuing court has already ruled on issues presented by [the] subpoena-related motion," *Moon Mountain Farms, LLC v. Rural Community Insurance Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014), or where the issuing court is "in a better position to rule on the . . . motion . . . due to [its] familiarity with the full scope of issues involved." *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 46 (D.D.C. 2014).

Once a non-party objects to a subpoena, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). The scope of discovery a party may obtain through a subpoena is the same as that applicable under Federal Rule of Civil Procedure 26(b). *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal. 2006). That means a party may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).

1  **B.      The Court Should Transfer The Proceeding To The Western District of Washington**

2        Rule 45(f) provides for transfer of a subpoena enforcement proceeding, to the district
3  where the subpoena was issued, where "exceptional circumstances" are found. As the 2013
4  Advisory Committee Notes highlight, one such exceptional circumstance is where transfer is
5  necessary "in order to avoid disrupting the issuing Court's management of the underlying
6  litigation." *See* Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. That is
7  exactly the case here.

8        The issuing Court is currently overseeing a slate of six related consumer class action
9  lawsuits against social casino companies, including the underlying *High 5* case, which are each
10 at various stages of litigation or settlement. The underlying *High 5* matter is at a particularly
11 critical juncture: class certification was recently granted, summary judgment briefing is
12 imminent, and the information sought through the subpoena forms the crux of Plaintiff's case on
13 the merits. Moreover, across the six related cases, the issuing Court has already grappled with the
14 propriety of nearly a dozen subpoenas served on either Facebook, Apple, Google, or Amazon in
15 different contexts, including a practically identical subpoena to Facebook in the underlying *High
16 5* case. *See, e.g.*, *Wilson*, No. 18-cv-05275-RBL, Dkt. 132 (order re subpoenas to Google,
17 Facebook, and Apple over certain transaction data); *Kater v. Churchill Downs Incorporated*, No.
18 15-cv-00612-RSL, 2020 WL 7220618, at *1 (W.D. Wash. Nov. 16, 2020) (order re subpoena to
19 Amazon over certain class member contact information); *Benson v. DoubleDown Interactive,
20 LLC*, No. 18-cv-00525-RBL, Dkt. 126 (W.D. Wash. Aug. 7, 2020) (order re subpoenas to Apple,
21 Google, and Facebook over, *inter alia*, certain transaction data). Accordingly, the district court
22 that has been overseeing the underlying litigation for more than three years—in addition to
23 related litigation against social casino companies going back as early as April 2015—is uniquely
24 positioned, at this critical juncture, to adjudicate the merits of Facebook's objections.

25        While it's true that a prime concern for the Court in adjudicating a motion to transfer
26 pursuant to Rule 45(f) "should be avoiding burdens on local nonparties subject to subpoenas,"
27 *see* Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment, any potential burden to

Facebook is outweighed here by the benefits of transfer. Facebook is a multinational behemoth worth nearly one trillion dollars. Facebook employs more than 7,000 employees in the Seattle area alone, and the many international law firms it routinely taps for representation are all able to file papers in the Western District of Washington. In other words, this enforcement proceeding will be no more burdensome to Facebook in Seattle than it would be in San Francisco.

Furthermore, efficiency and judicial economy would best be served by transferring this case to the Western District of Washington. *See Argento v. Sylvania Lighting Servs. Corp.*, No. 15-cv-01277-JAD-NJK, 2015 WL 4918065, at *5 (D. Nev. Aug. 18, 2015) (efficiency and judicial economy relevant considerations). The District Court in the Western District of Washington knows the underlying litigation extremely well, given the last three and a half years of litigation, and is uniquely well-positioned to adjudicate whether Facebook should be compelled to comply with the subpoena. *See, e.g.*, *Wilson*, No. 18-cv-05275-RBL, Dkt. 134 (noting that, "as the three-digit docket number for [one of High 5's motion's] indicates, the parties have already spent considerable time and judicial resources litigating this case about the legality of app-based casino games in Washington State"); Dkt. 132 (order on subpoena to Facebook and Google). Given that, transfer to the Western District of Washington would further the interests of efficiency and judicial economy.

**C.     Alternatively, The Court Should Compel Facebook To Comply With The Subpoena**

In the alternative, the Court should compel Facebook to comply with the subpoena. The subpoenaed information—transaction-level information from within High 5's apps—is relevant because it will serve as a keystone exhibit to Plaintiff's imminent Motion for Summary Judgment. Facebook's objections are primarily based on purported burden concerns, but the computer query necessary to produce the subpoenaed information is exceptionally straightforward, and the responsive information likely constitutes just a few megabytes of data. Indeed, Facebook's peer platform, Google, has already fully produced the requested transaction data, and Apple has committed to do the same. *See* Silver-Korn Decl. ¶ 9.

Facebook's only other substantive objection—that Plaintiff's subpoena seeks information Facebook has purportedly already produced in the *High 5* case—is just plain wrong. While Facebook provided a class action administrator with Facebook user contact information on the heels of class certification so that the administrator could create a class list in order to effectuate notice, that production contained no transaction data whatsoever (which, to be clear, is the only data at-issue here). Here, by contrast, Plaintiff seeks a production of transaction data, such that the transaction records themselves will be a part of Plaintiff's evidentiary record for summary judgment (and trial). Facebook has not argued, and cannot reasonably argue, that this information is irrelevant or disproportionate to the needs of this case.

Because the subpoenaed information is relevant to the underlying dispute and because none of Facebook's objections outweigh the need for the information, the Court should—in the event that it does not order transfer this action to the Western District of Washington—order Facebook to comply with the subpoena attached hereto as Exhibit 4.

## CONCLUSION

The Court should transfer this action to the Western District of Washington. In the alternative, the Court should order Facebook to comply with the subpoena attached hereto as Exhibit 4.

DATED this 3rd day of December, 2021.

By: /s/ Brandt Silver-Korn
Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
Brandt Silver-Korn (SBN 323530)
bsilverkorn@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300/Fax: 415.373.9435

*Attorneys for Plaintiff Sean Wilson*